# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**DARRIN DILLON,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0922**    (BOR Appeal No. 2051150)
(Claim No. 2015026892)

**RALEIGH COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

**FILED**

August 24, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Darrin Dillon, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Raleigh County Board of Education, by T. Jonathon Cook, its attorney, filed a timely response.

The issue on appeal is the compensability of the claim for carpal tunnel syndrome. The claims administrator denied the claim on April 29, 2015. The Office of Judges affirmed the denial of the claim in its March 8, 2016, Order. The Order was affirmed by the Board of Review on August 31, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Darrin Dillon worked for the Raleigh County Board of Education for nineteen years as a custodian. He stopped working for the Raleigh County Board of Education on March 17, 2013. On March 24, 2014, Mr. Dillon alleged he had bilateral carpal tunnel syndrome due to his work as a custodian. On March 11, 2013, about a week prior to his last day of employment with the school board, Barry Vaught, M.D., performed an electromyogram due to Mr. Dillon's complaints of numbness in his right hand. The test was normal with no evidence of carpal tunnel syndrome on either his right or left hand.

Wassim S. Saikali, M.D., started treating Mr. Dillon for rheumatoid arthritis on June 19, 2013. Dr. Saikali noted tenderness on the small joints of the hands and feet of Mr. Dillon.

1

However, the degree of pain exhibited was greater than it should have been based on the objective findings. On July 31, 2013, Dr. Saikali diagnosed osteoarthritis and chronic pain syndrome. He found no clinical evidence of rheumatoid arthritis even though Mr. Dillon's rheumatoid factor was elevated. On November 14, 2013, Mr. Dillon advised Dr. Saikali that he was experiencing pain and discomfort in the hands associated with morning stiffness, which was worse on cold days. Dr. Saikali again noted Mr. Dillon showed no evidence of rheumatoid arthritis, even though his rheumatoid factor was positive.

Mr. Dillon continued to treat with Dr. Saikali in 2014. On May 5, 2014, Mr. Dillon told Dr. Saikali that he was having bilateral hand pain and had problems gripping things. He was given a Depo-Medrol injection and a prescription for Lodine and Plaqueril. On July 7, 2014, Dr. Saikali noted Mr. Dillon continued to experience hand pain and discomfort associated with stiffness upon waking. Mr. Dillon denied any numbness or tingling. Dr. Saikali diagnosed generalized osteoarthritis. On October 7, 2014, Dr. Saikali noted Mr. Dillon continued to complain of pain in his left hand. He has more pain around the second and third metacarpophalangeal joints, as well as stiffness and numbness at night. Dr. Saikali noted he was tested for carpal tunnel syndrome two years ago and the testing was normal. Dr. Saikali diagnosed generalized osteoarthritis, but also noted possible carpal tunnel syndrome as evidenced by the numbness and tingling. He recommended a nerve test.

Dr. Vaught performed an electromyogram on October 24, 2014. The testing revealed evidence of mild bilateral median mononeuropathy at the wrists, consistent with carpal tunnel syndrome. Dr. Vaught diagnosed carpal tunnel syndrome. On January 7, 2015, Mr. Dillon was seen for follow-up of his osteoarthritis by Ruth Rhodes, PA-C, in Dr. Saikali's office. He complained of pain in his hands, hips, and feet. The most pain was in his left arm where he underwent left bicep tendon rupture repair the previous week. Ms. Rhodes diagnosed osteoarthritis with history of positive rheumatoid factor and recommended he continue taking Lodine.

On March 11, 2015, Mr. Dillon submitted the Employee's and Physicians' Report of Occupational Injury or Disease stating he developed hand and wrist problems from repetitive bending of the wrist and use of tools associated with his work. Michael Kaminsky, D.C., completed the physician's section of the form. He noted Mr. Dillon had a bilateral repetitive stress injury as a result of his work.

Dr. Kaminsky stated in a narrative report dated April 6, 2015, that Mr. Dillon sustained an occupational disease as a result of his essential work tasks over several years while working as a custodian/janitor. He started having numbness and tingling in his hands several years ago. He started to experience problems with gripping, pushing, pulling, and working with tools. The numbness and tingling in Mr. Dillon's hands eventually started waking him up at night. He altered his activities and used ice and braces but the symptoms progressed. In Dr. Kaminsky's opinion, Mr. Dillon's use of power tools, repetitive pulling, and gripping was the primary precipitating fact in the development of median nerve neuropathy consistent with carpal tunnel syndrome. In his opinion, the carpal tunnel syndrome was directly related Mr. Dillon's

occupational work requirements. Dr. Kaminsky recommended physical medicine treatments and an orthopedic evaluation.

The claims administrator rejected the claim on April 29, 2015. On June 18, 2015, Dr. Kaminsky completed the Physician Interview Questions for Carpal Tunnel Claims which stated he examined Mr. Dillon for the first time on March 11, 2015. Mr. Dillon had a history of cervical spondylosis. Based on his evaluation, Mr. Dillon had tenderness and a positive Phalen's sign in the left hand, as well as tenderness, a positive Tinel's sign, and a positive Phalen's sign in the right hand. Dr. Kaminsky listed the diagnosis as bilateral carpal tunnel syndrome and opined the condition was a consequence of Mr. Dillon's work.

On July 22, 2015, Dr. Saikali saw Mr. Dillon for follow-up of his osteoarthritis and early rheumatoid arthritis seropositive. He diagnosed osteoarthritis, rheumatoid factor, high tier positive and early inflammatory arthritis secondary to rheumatoid arthritis. Dr. Saikali did not see swelling or synovitis. He prescribed Plaqueril. Mr. Dillon was seen by Dr. Saikali again on October 22, 2015 for follow-up of his osteoarthritis and early rheumatoid arthritis seropositive. Dr. Saikali noted Mr. Dillon complained of pain and discomfort in the hands, wrists, and elbows with stiffness and swelling. Dr. Saikali diagnosed rheumatoid arthritis, early disease. He noted most of Mr. Dillon's symptoms were osteoarthritis and chronic pain.

On November 20, 2015, Mr. Dillon testified at a hearing before the Office of Judges. He stated that his job as a custodian required him to maintain the school grounds, clean the inside and outside of buildings, mow, sweep, and take out trash. He used heavy duty mops, dust mops, and scrubbing machines. He also used a propane buffer which had a seventeen horsepower propane engine to polish and shine floors about one hour per day. In 2010, he noticed pain and numbness in his hands and felt like his hands quit functioning. He had pain in his hands and he started to drop things. Surgery had been recommended, but he did not want to have surgery. He continued to have numbness and fatigue in his hands. He stopped working in 2013 due to pain in his back and hands. He has high blood pressure, high cholesterol, and had been diagnosed with rheumatoid arthritis. Changes in his hands since he stopped working in 2013 included increased intensity of pain and decreased endurance, making his hands tire more easily.

In its March 8, 2016, Order, the Office of Judges noted that the determination of whether carpal tunnel syndrome is work-related required an examination of factors as set forth in West Virginia Code of State Rules §§85-20-41.1-85-20-41.5(2006) including the history, physical examination, and appropriate diagnostic tests and examinations. Additional factors include diagnostic accuracy, confounding conditions, work setting, and duration for the symptoms in assigning causality. The Office of Judges noted Mr. Dillon had been diagnosed with rheumatoid arthritis and hypothyroidism, both of which were confounding conditions for carpal tunnel syndrome. Additionally, Mr. Dillon's electromyogram shortly before he stopped working was negative for carpal tunnel syndrome. Diagnostic testing did not reveal the presence of carpal tunnel syndrome until nineteen months later, which was a year and half after Mr. Dillon quit working. Moreover, the type of work Mr. Dillon performed as a school custodian did not involve the constant use of vibratory tools. Therefore, the Office of Judges determined the rejection of the claim had to be affirmed.

3

The Board of Review affirmed the Office of Judges, March 8, 2016, Order in its August 31, 2016, decision. After review, we agree with the Board of Review. Mr. Dillon was not diagnosed with carpal tunnel syndrome until a year and a half after he stopped working due to back and hand pain. Dr. Saikali, who has treated Mr. Dillon over a two year period of time, has consistently diagnosed him with osteoarthritis, an elevated rheumatoid factor, and chronic pain. Diagnostic testing completed while Mr. Dillon was still working was normal, with no evidence of carpal tunnel syndrome. He continued to have experience tingling and numbing in his hands after he quit working. The preponderance of the evidence supports the denial of the claim.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 24, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4